**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                                Case No.: 3:08-cr-00370-MMH-HTS

THOMAS G. MANUEL

_____

### DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE

        Defendant, Thomas G. Manuel, by and through undersigned counsel, hereby moves this

Honorable Court for its order granting a downward departure from the determined sentencing

guidelines range.  In support thereof, Mr. Manuel states:

        1.        On July 31, 2009, Mr. Manuel entered a plea of guilty to one count of violating 18

U.S.C. §666(a)(1)(B). (Dkt. 94).

        2.        Mitigating circumstances exist in this case of a kind and to a degree not adequately

taken into consideration by the Sentencing Commission in formulating the guidelines, which should

result in a sentence below that determined to be within the applicable sentencing guideline range and

a sentence that does not require incarceration.

        3.        Mr. Manuel is a disabled, 64-year old heart transplant survivor.

        4.        Mr. Manuel suffered a major heart attack on March 31, 1998.  After being stabilized,

he underwent open heart surgery.  A pacemaker/defibrillator was implanted.  Mr. Manuel spent

almost 4 weeks in the hospital.  His recovery was very slow.

        5.        Due to the severity of his heart attack, a significant portion of Mr. Manuel's heart

muscle had died.  This in turn caused the efficiency of his heart (ejection ratio) to continue to

diminish.  Within 18 months, Mr. Manuel was basically confined to a reclining chair.  He could not

sleep in a bed, had minimal strength, lost 85 pounds and could walk only a few steps before getting winded and having to sit down.

6.     His cardiologist recommended Mr. Manuel seek placement on the heart transplant waiting list.  After taking a battery of tests to determine his eligibility, Mr. Manuel was placed on the heart transplant waiting list in 2001.  Each year, approximately 1,500-2,000 heart transplants are performed.  There are approximately 4000 people at any one time on the list.  Mr. Manuel was very fortunate and received a heart transplant in October 2002.

7.     Shortly after the transplant and due to his suppressed immune condition, Mr. Manuel was infected by the cytomegalovirus (CMV).  This virus has had a long term impact on Mr. Manuel's stamina and potential other infections.  *See* letter from Daniel S. Yip, M.D., dated September 22, 2009 (attached hereto as Exhibit "A"), and letter from Megan Landis, M.D., dated September 10, 2009 (attached hereto as Exhibit "B").

8.     Mr. Manuel takes 29 pills a day, consisting of 14 different medicines and four dietary supplements.  Mr. Manuel's annual prescription expenditures are over $16,000 per year.

9.     Due to his suppressed immune condition, he is extremely susceptible to infections. Two to three times a year, Mr. Manuel has extended illnesses.  He has to be vigilant concerning the medical conditions of people around him and frequently wears a mask in public places.

10.    Mr. Manuel requires very specialized care.  There are very few hospitals in the country that provide post heart transplant medical services.  In Jacksonville, the only post heart transplant hospital is the Mayo Clinic.  Mr. Manuel is a patient at the Mayo Clinic.  Mr. Manuel goes to the Mayo Clinic during six to seven months every year, sometimes with multiple visits during a month.  These visits are for ongoing monitoring, prevention and treatment.  Every two years, Mr. Manuel undergoes a review of his medical condition.  The cost of this extensive

examination is approximately $50,000.  Each year his annual transplant related medical maintenance expenses are approximately $18,500.

11.     According to the United Network for Organ Sharing (UNOS) as of December 31, 2008 there were 22,851 living heart transplant recipients in the United States.  *See* Exhibit "C," attached hereto.  "Approximately 85 to 90 percent of heart transplant patients are living one year after their surgery, with an annual death rate of approximately 4 percent thereafter.  The three-year survival rate approaches 75 percent."  Exhibit "D" attached hereto at 4.  Mr. Manuel, then, has only an approximately 50 percent chance of living through the next year.

12.     As a result of the foregoing, Mr. Manuel is required to take a broad regime of medications, some of which are non-formulary with the Bureau of Prisons.

13.     In addition to Mr. Manuel's physical condition, unbeknownst to Mr. Manuel at the time of the offense, Mr. Manuel was suffering from bipolar disorder, that was only diagnosed after the commission of the offense.  Subsequently, Mr. Manuel has received treatment for such condition and is currently on medication regulating the disorder.  His untreated bipolar disorder substantially impaired his judgment at the time of the offense and in a manner affecting his commission of the offense conduct.  His psychiatrist, who diagnosed him after the offense, has described the manner in which the disorder produces prolonged periods of mania and of depression, grandiose delusions, omnipotent feelings and euphoria, which can lead to crossing lines of legal behavior because of impaired judgment.  *See* letters from R. Taylor King, M.D., dated November 10, 2009 and November 16, 2009 (attached hereto as Exhibits "E" and "F").  Dr. King's curriculum vitae is attached as Exhibit "G."  Also, Mr. Manuel's former sister-in-law, a psychiatrist, observed him experiencing apparent extreme manic episodes resulting in unrealistic and flighty ideas leading to

3

him pursuing risky business and financial ventures.  *See* letter from Holly Blatman, M.D., dated February 1, 2009 (attached hereto as Exhibit "H").  Dr. Blatman's curriculum vitae is attached hereto as Exhibit "I."

14.    Up until the time of the Indictment in this cause, Mr. Manuel maintained an exemplary employment record, including approximately nine years of service in the United States Navy as a naval aviator.

15.    Mr. Manuel has enormous family responsibilities as both he and his wife suffer from significant medical issues while raising their now-11-year-old daughter.  The majority of the family's income is derived from Mr. Manuel's disability benefits.  Social Security Disability Income would cease upon commencement of any incarceration and is necessary for the Manuels to pay the mortgage on their home.  Already, Mr. Manuel and his wife and his daughter face the expiration of private disability insurance benefits on April 15, 2010, his 65th birthday.  Additionally, as Mr. Manuel's wife is gainfully employed, Mr. Manuel assumes many of the traditional child care functions of the family.[1]  In light of the foregoing unique circumstances applicable to Mr. Manuel's family ties and responsibilities, a sentence within the applicable guidelines range will cause a substantial, direct and specific loss of essential care taking and financial support of Mr. Manuel's family.  The loss of care taking and financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated Mr. Manuel; the loss of care taking or financial

---

[1]  It should be observed that Mr. Manuel's family had no involvement in the offense. While public corruption is a serious offense, it should be noted that the allegations pertaining to Mr. Manuel involve acceptance of $60,000 in cash in conjunction with a county commission vote for which Mr. Manuel had already publicly and actively supported prior to the offense and which ultimately was a unanimous vote of the county commission.  *See* Exhibit "J," attached hereto (March 31, 2006 letter from Tom Manuel to the Editor, St. Augustine Record).

support is one for which no effective remedial or ameliorative programs are reasonably available, making the Mr. Manuel's care taking or financial support irreplaceable to the Mr. Manuel's family; and a departure will effectively address the loss of care taking or financial support. As a result, a downward departure is warranted under U.S.S.G. §5H1.6.

16.     Although the Government has not filed a motion for downward departure pursuant to U.S.S.G. §5K1.1, the Court should be made aware that when Mr. Manuel was initially confronted by FBI agents regarding his offense, he immediately cooperated and attempted to render substantial assistance. Through no fault of Mr. Manuel, his efforts in rendering substantial assistance were fatally compromised by the public disclosure of the Government's investigation by St. John's County Sheriff David Shoar to the news media, a disclosure that contravened Department of Justice and FBI policy against public disclosure, or even acknowledgment of pending investigations. *See* media articles generated as a result of Sheriff Shoar's press conference publicly outing Mr. Manuel as a government target, attached hereto as a composite Exhibit "K." After being confronted by agents on June 5, 2008, Mr. Manuel immediately gave a written sworn statement and began cooperating with the FBI, engaging in recorded conversations the following day. Mr. Manuel continued to engage in recording conversations for the FBI from June 6 through June 18, 2008. Sheriff Shoar's motives in making such an announcement on June 12, 2008 are subject to question, as his disclosure was contrary to Department of Justice guidelines. *See* USAM1-7.530, a copy of which us attached hereto as Exhibit "L." Disclosure of information regarding ongoing investigations, and Sheriff Shoar's disclosure thwarted the FBI's ongoing investigation. But for the inappropriate disclosure of the investigation by state law enforcement, contrary to federal guidelines, a strong possibility exists that Mr. Manuel would have benefited from the Government's filing of

a motion pursuant to U.S.S.G. §5K1.1.  The Guidelines do not consider or do not adequately consider that the adverse impact of a sheriff's unauthorized public disclosure of a FBI investigation negates an individual's ability to render substantial assistance.

17.     This Court also should depart downward under U.S.S.G. §5K2.20, as the offense committed by Mr. Manuel consisted of a single criminal transaction that was committed without significant planning; was of limited duration; and represented a marked deviation by the Mr. Manuel from an otherwise law abiding life.  *See* U.S.S.G. §5K2.20.  The offense relates to the acceptance of two cash payments, $10,000 on April 10, 2008 and approximately $50,000 on June 5, 2008.

18.     Although the Government conducted its investigation of Mr. Manuel for over one year prior to confronting him, the acceptance of the aforementioned cash payments were not the result of any significant planning.  The criminal transaction was of limited duration, to wit: a payment on April 10, 2008 and a subsequent related payment on June 5, 2008.  The offense to which Mr. Manuel has pleaded guilty represents a marked deviation by the Mr. Manuel from his otherwise law abiding life, including, but not limited to, nine years of honorable service in the United States Navy and six years of public service in which Mr. Manuel has provided much service and many benefits to the citizens of St. Johns County by virtue of, among other things,  his pursuit of responsible growth management policies and reductions in governmental spending. See Defendant's Sentencing Memorandum, Exhibits 8 through 14.

WHEREFORE, Mr. Manuel respectfully requests this Honorable Court grant a downward departure from the determined sentencing guideline range and sentence Mr. Manuel to probation and/or home detention.

**MEMORANDUM OF LAW**

A district court may impose a sentence outside the range established by the sentencing guidelines if the court finds the existence of one or more mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines. 18 U.S.C. §3553(b): U.S.S.G. §5K2.0. Even when a circumstance forming the basis for the departure is taken into consideration in determining the guideline range, the court may depart if it determines that such circumstances present in the offense to a degree substantially in excess of, or substantially below, that which ordinarily is involved in that kind of offense. U.S.S.G. 5K2.0(a)(3).

In addition, an offender characteristic or other circumstance identified in Chapter 5, part H(offender characteristics) as not ordinarily relevant in determining whether a departure is warranted may justify a downward departure if such offender characteristic or other circumstance is present to an exceptional degree. U.S.S.G. §5K2.0(a)(4). Furthermore, "the court may depart from the applicable guidelines range based on a combination of two or more offender characteristics or other circumstances, none of which independently is sufficient to provide a basis for departure only of (1) such offender characteristics or other circumstances, taken together, make the case an exceptional one; and (2) each such offender characteristic or other circumstance is (A) present to a substantial degree; and (B) identified in the guidelines as a permissible ground for departure, even if such offender characteristic or other circumstance is not ordinarily relevant to a determination of whether a departure is warranted."

Although age is not ordinarily relevant in determining whether a departure is warranted, age may be a reason to depart downward in a case in which age, coupled with his infirmity renders a

form of punishment such as home confinement equally efficient as and less costly than incarceration. U.S.S.G. §5H1.1. Likewise, although physical condition is not ordinarily relevant in determining whether to grant a departure, "an extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment." U.S.S.G. §5H1.4.

In *United States v. Baker*, 502 F.3d 465, 466 (6th Cir. 2007), involving possession of an unregistered short-barreled firearm, the court sentenced the defendant to five years probation, including home confinement for the first year of probation. The facts of the case showed that the defendant had fired a shotgun at his estranged spouse near her head advising her that "if he wanted to kill he could have." *Id*. at 467. The presentence report set the offense level at 17, criminal history category II, with a guidelines range of 27-33 months. *Id*. The circuit court affirmed the sentence based on the defendant's role as a caregiver for his older son who had received a heart transplant, as well as his demonstrated remorse. *Id*. at 469. *See also*, *United States v. Turner*, 88 F.Appx. 307 (10th Cir. 2004) (considering sentence imposed for violation of conditional release, but noting that the initial sentence imposed by the district court for defendant pleading guilty to bank fraud amounting to nearly $100,000.00 was five years supervised release due to his condition as a chronic heart patient).

U.S.S.G. 5K2.20 provides that a district court may grant a downward departure in an exceptional case if: "(1) the defendant's criminal conduct meets the requirements of subsection (b); and (2) the departure is not prohibited under subsection (c)." In order to receive a downward departure under this policy statement, the Mr. Manuel must demonstrate that he committed a single criminal occurrence or single criminal transaction that (1) was committed without significant

planning; (2) was of limited duration; and (3) represents a marked deviation by the Mr. Manuel from an otherwise law abiding life.  *See* U.S.S.G. §5K2.20(b).  As the departure sought under this policy statement is not prohibited under subsection (c) and Mr. Manuel meets the eligibility requirements of subsection (b), this Court should grant a downward departure as a result of the offense constituting aberrant behavior.

Mr. Manuel's conduct constitutes aberrant behavior.  The criminal conduct was a single criminal transaction that occurred without significant planning, was of limited duration and represented a marked deviation from Mr. Manuel's other law abiding life.  *See, e.g., United States v. DeVegter,* 439 F.3d 1299, 1306 (11th Cir. 2006).  The offense involved receipt of two cash payments within a limited period of time, which related to political positions that Mr. Manuel took as a member of the St. Johns County Commission and which positions he had previously committed to taking even prior to becoming a St. Johns County commissioner.  His life had been otherwise law abiding, and so the offense conduct represents a marked deviation.

Furthermore, this case presents extraordinary circumstances supporting a downward departure. All of the circumstances of Mr. Manuel, his undiagnosed bipolar disorder and its effects on his judgment, the manner in which this case was investigated and proceeded and all of the other facts and circumstances surround this case demonstrate the extraordinary nature of this case and of Mr. Manuel.  The Court should depart downward from the otherwise applicable guidelines range, and the Court has the legal authority, factual basis and extraordinary circumstances upon which to do so.  Accordingly, the Court should impose a sentence of probation or home confinement, or a combination thereof.

Respectfully submitted,


  /s/ D. Gray Thomas
Wm. J. Sheppard, Esquire
Florida Bar No.:  109154
D. Gray Thomas, Esquire
Florida Bar No.:  956041
Matthew R. Kachergus, Esquire
Florida Bar No.:  503282
Sheppard, White, Thomas & Kachergus, P.A.
215 Washington Street
Jacksonville, Florida 32202
Telephone:      (904) 356-9661
Facsimile:      (904) 356-9667
Email:            sheplaw@att.net
COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 8, 2010, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF System which will send a notice of electronic filing to the following:

**Julie Hackenberry Savell, Esquire**
**Assistant United States Attorney**
**300 North Hogan Street**
**Suite 700**
**Jacksonville, Florida 32202**

I HEREBY CERTIFY that on January 8, 2010, a true and correct copy of the foregoing document and the notice of electronic filing was sent by United States Mail to the following non-CM/ECF participants:

N/A

_/s/ D. Gray Thomas_____
ATTORNEY

jrd[manuel - mot downward departure]